LANGDON *v.* LENTZ.

FRAUDULENT CONVEYANCES—BILL IN AID OF EXECUTION—EVIDENCE —SUFFICIENCY.

In a suit in aid of execution to set aside a conveyance of land from defendant to his father as in fraud of creditors, the decree of the court below granting plaintiffs the relief asked for, *held*, justified by the record.

Appeal from Arenac; Smith (Guy E.), J.    Sub-

mitted January 10, 1923.    (Docket No. 89.)    Decided October 1, 1923.

Bill in aid of execution by Gordon B. Langdon and another against Frank J. Lentz and others.    From a decree for plaintiffs, defendants appeal.    Affirmed.

*B. J. Henderson,* for plaintiffs.

*A. Elwood Snow* (*M. D. Snow,* of counsel), for defendants.

STEERE, J.    This bill is filed in aid of an execution of a judgment recovered by plaintiff in the circuit court of Arenac county against defendant Frank J. Lentz, under which the sheriff levied upon a piece of land in said county lying along the shore of Saginaw Bay, described as the east fractional half of the southeast quarter of section 36, in township 19 north, of range 5 east.

Defendants Mabel Lentz and John C. Lentz are respectively wife and father of defendant Frank Lentz. Previous to May 29, 1919, Frank Lentz owned the fractional 80 acres above described and was engaged in commercial fishing on Saginaw Bay at a fishery belonging to his uncle located near by this land.    Plaintiff's son was employed by him at this fishery, and on Frank's false representations as to the location of the fishery, as they subsequently learned, they, on May 29, 1919, purchased from him his fractional 80 of shore frontage for a consideration of $3,600, paying $2,000 in cash and giving him a $1,600 mortgage on the land for the balance of the purchase price.    Subsequently they brought an action against Frank charging him with deceit and fraud in falsely representing to them that the fishery was located on the land they purchased from him.    On January 25,

1922, they recovered a verdict and judgment against him of $2,400.

February 16, 1922, execution was issued on said judgment and on February 21, 1922, a levy was made upon the land above described; but it was found that on February 3, 1922, Frank J. Lentz and his wife, Mabel, had given a quitclaim deed of the property to his father, John C. Lentz. On February 25, 1922, this bill was filed to have said deed set aside on the ground that it was a mere sham, fraudulently given, without consideration, to hinder and defraud the creditors of Frank Lentz and especially to prevent plaintiffs from collecting their judgment. Defendants answered in denial, claiming that the deed was given to John Lentz for a valuable consideration paid by him in good faith.

The interest in this land which Frank Lentz and wife conveyed to his father, John Lentz, by the quitclaim deed of February 3, 1922, was acquired by Frank on foreclosure of the $1,600 mortgage he had received from plaintiffs to secure deferred payment for part of the purchase price. The mortgage was foreclosed in his name and the property bid in at the foreclosure sale for him, and in his name, by his attorney.

For the defense it is contended that Frank Lentz sold this mortgage to his father in May, 1921, for $1,600 cash, that it thereafter belonged to him, was foreclosed for him, and bid in by mistake in Frank's name. The only written evidence relating to a sale of the mortgage, claimed to have been made in May, 1921, is an unacknowledged, unwitnessed and unrecorded assignment of the mortgage from Frank to his father for a stated consideration of $1,600, dated August 1, 1921, which was just before plaintiffs began their action for fraudulent misrepresentation against Frank, who, some time after the action was commenced, gave the mortgage to his attorney with in-

structions to foreclose it.    He admitted that he did
not tell his attorney that it belonged to his father, but
stated he told him to bid it in in his father's name, of
which the attorney testified he had no recollection, but
if he had been so instructed he believed he would
have charged his mind with it; that he foreclosed the
mortgage for Frank Lentz, who paid him for his
services.

A somewhat peculiar oversight in that connection
is in the answer of defendants, sworn to by both Frank
and his father, which declares the latter paid Frank
for the mortgage $1,900.70, "to cover the amount
stated in the sheriff's deed on foreclosure," while
they both testified at the hearing that the purchase
price paid Frank by his father for the mortgage,
long before its foreclosure, was just $1,600 cash in
hand.

The lower court found plaintiffs had established the
truth of the material allegations in their bill and
granted the relief asked.    The applicable rules of law
are not in controversy and the issues involved are
purely of fact.

The two most important witnesses in the case, for
both sides, are defendants John and Frank Lentz.
Even as disclosed by the printed pages of the record
peculiarities in their manner of testifying appear.
When confronted with an apparent inconsistency
Frank was liable to suffer from an attack of lapse
of memory, while his father was disposed to stand
more sturdily by his inconsistencies, regardless of
where they led to.    Neither is on this record a con-
vincing witness.    The opportunity of the trial court
to see and hear the witnesses and observe them as they
testified impresses us as of more than ordinary im-
portance here in passing upon their credibility.

Only Frank and his father testify to any knowledge
of the latter's purchase of the mortgage.    They both

state that it took place in May, 1921, was a cash transaction in which Frank handed his father the mortgage and accompanying note for which the latter handed him $1,600 in currency. It was otherwise conclusively shown that Frank, who was then in the chicken business and kept an account with the State Bank of Standish, had deposited and checked out the $2,000 he received from plaintiffs on this land purchase, and borrowed $1,000 more from the bank to secure which he had at that time on pledge with the bank the note and mortgage which he claims to have delivered to his father. These he afterwards redeemed and the following fall he foreclosed the mortgage in his own name. An attempt to investigate his canceled checks on the bank met with poor success. Asked about them he replied:

"After I got balanced up I most generally burned up a lot of those old checks."

Requested to look over his papers and see if he could not find any of them he answered:

"I don't know as I could, I have burned up most of them."

The testimony of John Lentz seems equally unsatisfactory. He was loyal to his son and backed his testimony to the best of his ability. He was not ignorant of what was going on; is shown by other testimony to have participated in an attempt to settle the lawsuit between Frank and plaintiffs, which he denies, and with his belated, unwitnessed and unrecorded assignment of the mortgage can scarcely figure as an outside innocent party. It was shown that he also did business with the Standish bank, had during the two years prior to that time made numerous deposits with and at times borrowed money from the bank, and apparently resented the curiosity of plaintiff's counsel as to how he happened to be carrying

so much money around in his pocket for so long a time as his evidence indicated. He at first replied: "I got it by selling beans and one thing and another." This was amplified by the explanation that he had raised beans which he sold to the elevator at Saginaw "and got four or five hundred dollars for them; a couple of years ago now, * * * kept selling along and kept the money in my pocket some of the time and at home some of the time." The subject being pursued he was asked and answered:

"Q. On the day you came down here with sixteen hundred dollars in your pocket, did you come to see your boy?

"A. No, sir.

"Q. How did you come to have sixteen hundred dollars with you?

"A. Well, I had it, I had it at the Ridge there and I was going to put it in the bank.

"Q. Well, where was it at the Ridge?

"A. Well, that is my business, not yours."

Discussion of the evidence in further detail would serve no beneficial purpose. After a careful reading of the record we are not persuaded that the conclusions reached by the trial court are against the convincing weight of evidence or that the decree rendered should be disturbed.

It is therefore affirmed, with costs to plaintiffs.

WIEST, C. J., and FELLOWS, McDONALD, CLARK, BIRD, SHARPE, and MOORE, JJ., concurred.